Dear Representative Crocker,
¶ 0 This office has received your request for an Attorney General Opinion. You asked, in effect, the following question:
Does the Oklahoma Administrative Procedures Act require that theOklahoma Health Care Authority promulgate rules prior to theformulation and submission for federal approval of a Section1115(a) Research and Demonstration project waiver application anda Section 1915(b) Freedom of Choice waiver application?
¶ 1 Essential to this opinion is a general discussion of the federal Medicaid program. The federal Medicaid program was created in 1965 "for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." Harris v. McRae,448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). The State of Oklahoma participates in the Medicaid program under a cooperative cost-sharing structure in which the federal government reimburses to the State a portion of the costs for providing medical services to eligible individuals. Social Security Act (the Act), §§ 1901 et seq., as amended, 42 U.S.C. § 1396 et seq. (1991 and Supp. 1995). Although participation in the Medicaid program is voluntary, a decision to participate requires a state to comply with federal statutory requirements. Alexander v.Choate, 469 U.S. 287, 289 n. 1, 105 S.Ct. 712, 714 n. 1,83 L.Ed.2d 661 (1985).
¶ 2 The federal statutes governing the state Medicaid programs require each state to submit to the Health Care Financing Agency (HCFA) a "state Medicaid plan" describing how the state intends to administer its program to ensure compliance with the federal regulations. 42 U.S.C. § 1396a(a) (1991 and Supp. 1995). Upon approval of the State Plan by the Secretary of the United States Department of Health and Human Services (hereinafter Secretary of HHS), the federal government will reimburse a portion of the expenditures incurred by the State. Skandalis v. Rowe,14 F.3d 173, 175 (2d Cir. 1994). Pursuant to federal statutory and regulatory law, the present Oklahoma Medicaid State Plan specifies eligible groups, the type and scope of Medicaid services available, and the payment levels for those services.42 C.F.R. § 430.0 (1994). Because the current Oklahoma Medicaid State Plan involves a fee-for-service reimbursement program, the individual or entities providing services submit claims directly to the state for payment. Id.
¶ 3 Although requirements under the Act are mandatory upon the states, the Act provides a mechanism for waiver of such requirements under certain circumstances. Waivers permitting exceptions to State Plan requirements allow a state "to implement innovative programs or activities on a time-limited basis, and subject to specific safeguards for the protection of recipients and the program." 42 C.F.R. § 430.25(b) (1994). Another federal regulation explains that state waiver requests may be submitted by the "State Governor, the head of the Medicaid agency, or an authorized designee." 42 C.F.R. § 430.25(e) (1994). Although a state may submit applications for various types of waivers of State Plan requirements, for the purposes of this opinion only the 1115(a) and 1915(b) waiver applications will be discussed.
¶ 4 The 1115(a) waiver, or any experimental, pilot or demonstration project waiver, is contained in Section 1115 of the Act, as amended, 42 U.S.C. § 1315 (1991 and Supp. 1995), which provides in pertinent part:
 (a) In the case of any [Section 1115] experimental, pilot, or demonstration project which, in the judgment of the Secretary, is likely to assist in promoting the objectives of [the public assistance titles of the Act] in a State or States —
 (1) the Secretary may waive compliance with any of the [State Plan] requirements of section . . . 1396(a) . . . to the extent and for the period he finds necessary to enable such State or States to carry out such project. . . .
¶ 5 This statute was enacted to enable states to "`test out new ideas and ways of dealing with the problems of public welfare recipients.' S.Rep. No. 1589, 87th Cong., 2d Sess. 20, reprintedin 1962 U.S.C.C.A.N. 1943, 1961." Beno v. Shalala,30 F.3d 1057, 1069 (9th Cir. 1994). Further, 42 U.S.C. § 1315(a) (1991 and Supp. 1995) vests broad discretionary power in the Secretary of HHS to waive specific requirements of the Act and authorize projects not in compliance with the permissible statutory guidelines of the standard public assistance programs.
¶ 6 The second category of waiver to be described is often termed a "freedom of choice" waiver. Pursuant to Section 1902(a)(23) of the Act, as amended, 42 U.S.C. § 1396a(a)(23) (1991 and Supp. 1995), a State Plan for medical assistance must permit eligible recipients to obtain such assistance from any institution, agency, community, pharmacy or person authorized to provide such care. However, the Act, Section 1915(b), as amended,42 U.S.C. § 1396n (1991 and Supp. 1995) provides an exception to the general rule where the Secretary of HHS determines that it would be cost-effective, efficient, and not inconsistent with the purposes of the Act to waive this "freedom of choice" requirement.
¶ 7 Furthermore, 42 U.S.C. § 1396n(b)(1) (1991 and Supp. 1995), provides that one of these exceptions exists where a state desires to implement a primary care case-management system or a specialty physician services arrangement which restricts an individual to certain providers, in other than emergency circumstances, if such restriction does not substantially impair access to medical care of adequate quality where medically necessary.
¶ 8 To fully answer your question it is also important to examine certain State statutes relevant to the powers and duties of the Oklahoma Health Care Authority (OHCA). The first is 56O.S.Supp. 1994, § 1010.3[56-1010.3](A)(1) stating in part:
 On and after July 1, 1993, there shall be a state entity designated by law to assume responsibility for preparations for converting the present system of delivery of the Oklahoma Medicaid Program to a managed care system. In the event such state entity is not designated by law for such purpose, the Commission for Human Services or the Department of Human Services shall assume such responsibility.
¶ 9 Subsection D of Section 1010.3 further provides that the "designated state Medicaid agency shall apply for any and all federal Medicaid waivers necessary to implement the [Oklahoma Medicaid Healthcare Options] System. The application made pursuant to this subsection shall be designed to qualify for federal funding primarily on a prepaid capitated basis."
¶ 10 Accordingly, pursuant to 63 O.S.Supp. 1994, § 5009[63-5009](A), effective July 1, 1993, the OHCA, as the statutorily designated State Medicaid agency, assumed the responsibilities for transforming the present delivery of the State's Medicaid program to a managed care system. Moreover, on or after January 1, 1995, the OHCA became "the designated state agency for the administration of the State Medicaid Program," with the attendant duties and powers. 63 O.S.Supp. 1994, § 5009[63-5009](B). See42 C.F.R. § 431.10 (1994).
¶ 11 Thus, as the single State entity designated by law not only to administer the Oklahoma Medicaid State Plan, but also to convert the traditional fee-for-service Oklahoma Medicaid State Plan to a managed care system, the OHCA prepared and submitted for approval two federal waiver applications to the Secretary of HHS through HCFA, an agency within the Department of HHS. See42 C.F.R. § 430.25(f) (1994) (the Administrator of the HCFA central office has the authority to approve or deny waiver requests). Waivers allow a state "the opportunity to develop its own alternative to traditional medicaid programs which can provide information helpful to furthering the objectives of the Medicaid program." Phoenix Baptist Hosp. v. United States,728 F. Supp. 1423, 1428 (D. Ariz. 1989), aff'd, 937 F.2d 452 (9th Cir. 1991) (citation omitted).
¶ 12 In essence, these statutorily mandated waiver applications submitted by OHCA are requests asking authorization for Oklahoma to be prospectively "waived" or exempted from some of the usual policies and rules applicable to the current Oklahoma Medicaid State Plan in order to implement a managed care system, utilizing capitated, prepaid principles with either full or partial capitation. See 63 O.S.Supp. 1994, § 5009[63-5009](A)(1).
¶ 13 Pursuant to its statutory directive to prepare "any and all" necessary federal Medicaid waivers and to ensure compliance with State law requiring Oklahoma to begin operation of its managed care system by July 1, 1995, the OHCA prepared an additional application requesting a 1915(b) freedom of choice waiver. 42 U.S.C. § 1396n (1991 and Supp. 1995); 56 O.S.Supp.1994, § 1010.3[56-1010.3](C)(1), (D). A 1915(b) waiver request is considered approved unless denied by the Administrator of the central HCFA office within ninety (90) days. Another ninety (90) day period is triggered if a written request is received from either the HCFA central or regional administrator for additional information essential to reach a final decision.42 C.F.R. § 430.25(f) (1994).
¶ 14 Absent waiver approval, Oklahoma must continue to comply with the requirements outlined in its Medicaid State Plan and cannot implement a managed care system. Until Oklahoma obtains final approval from the Secretary of HHS for either waiver application, Oklahoma will continue to operate its longstanding traditional Title XIX fee-for-service Medicaid program in all areas of the State. Any requirements of the Medicaid statute and regulations not expressly waived continue in effect. J.K. By andThrough R.K. v. Dillenberg, 836 F. Supp. 694, 696 (D. Ariz. 1993).
¶ 15 In regard to the waiver applications and rulemaking under the Oklahoma Administrative Procedures Act (OAPA), a rule is defined as "any agency statement or group of related statements of general applicability and future effect that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of the agency." 75 O.S.Supp.1994, § 250.3[75-250.3](2). See Grand River Dam Auth. v. State,645 P.2d 1011, 1014 (Okla. 1982). The promulgation of rules by the OHCA describing the elements of the federal waiver applications was not required because "`[a] rule must necessarily be of generalapplication.'" State v. Freeman, 370 P.2d 307, 309 (Okla. 1962) (emphasis added). The waiver that is granted by the Secretary of HHS will contain the final characteristics and features of the managed care system. See also Beno v. Shalala,30 F.3d at 1062 (describes the waiver approval process as one of negotiation involving terms and conditions additional to the waiver application). Then, through the negotiation and approval process with HCFA, the OHCA will be able to determine the types of rules and regulations appropriate for promulgation in order to implement the managed care system. See 63 O.S.Supp. 1994, §5007[63-5007](D)(2) (expressly authorizes OHCA to adopt and promulgate rules as necessary and appropriate to carry out its duties and responsibilities).
¶ 16 Lacking approval by the Secretary of HHS, the formulation and submission of the waiver applications seeking federal approval to alter the existing traditional fee-for-service Oklahoma Medicaid program did not meet the OAPA threshold standard of "general applicability and future effect." 75O.S.Supp. 1994, § 250.3[75-250.3](2). Furthermore, because the OHCA is statutorily directed to prepare and submit any and all waiver applications "designed to qualify for federal funding primarily on a prepaid capitated basis," a rule promulgated would merely restate the duty already imposed by State law, as well as reiterate the obligations prescribed by properly promulgated federal regulations. 56 O.S. Supp. 1994, § 1010.3[56-1010.3](D). The OHCA has specific State statutory authority to apply for waivers pursuant to federal and statutory law to transform the present Medicaid program.[1] The process of applying for federal waivers is separate and apart from implementing a managed care program. It is the implementation of the program that requires the promulgation of rules under the OAPA.
¶ 17 Finally, the pervasive federal statutes and regulations governing the waiver process would appear to preempt the promulgation of any State rules and regulations prior to the formulation and submission of the waiver applications for federal approval. Guschke v. City of Oklahoma City, 763 F.2d 379 (10th Cir. 1985).
¶ 18 It is, therefore, the official Opinion of the AttorneyGeneral that:
The Oklahoma Health Care Authority was not required topromulgate rules pursuant to the Oklahoma AdministrativeProcedures Act, 75 O.S. 1991, § 250[75-250] et seq., as amended at75 O.S.Supp. 1994, § 250.2[75-250.2] et seq., governing theformulation and submission of a Section 1115(a) research anddemonstration project waiver application and a Section 1915(b)freedom of choice waiver application.
If waiver is granted, appropriate rules must be promulgatedpursuant to the Oklahoma Administrative Procedures Act forimplementation of the managed care system.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
REBECCA PASTERNIK-IKARD ASSISTANT ATTORNEY GENERAL
[1] The OHCA has the inherent authority to apply for waivers under existing federal law without prior State statutory authorization among its broad powers and duties as the single State agency designated to administer the Oklahoma Medicaid State Plan.